

STATE OF MINNESOTA

IN SUPREME COURT

A19-0173

Original Jurisdiction                                         Per Curiam

In re Petition for Disciplinary Action against
Paul Robert Hansmeier, a Minnesota Attorney,              Filed: April 22, 2020
Registration No. 0387795.                                 Office of Appellate Courts

---

Susan M. Humiston, Director, Timothy M. Burke, Deputy Director, Office of Lawyers Professional Responsibility, Saint Paul, Minnesota, for petitioner.

Paul R. Hansmeier, Sandstone, Minnesota, pro se.

---

SYLLABUS

Disbarment is the appropriate discipline for an attorney who made knowing misrepresentations and omissions of material fact in a personal bankruptcy proceeding.

Disbarred.

OPINION

PER CURIAM.

The Director of the Office of Lawyers Responsibility filed a petition for disciplinary action against respondent Paul Hansmeier, alleging that Hansmeier violated Minnesota Rules of Professional Conduct 8.4(c) and (d), by making knowing misrepresentations and omissions of material fact in a personal bankruptcy proceeding. Based on the referee's

1

findings and our own review of the record, we conclude that Hansmeier's misconduct warrants disbarment.

## FACTS

Paul Hansmeier was admitted to the practice of law in Minnesota in 2007. In September 2016, Hansmeier was indefinitely suspended from the practice of law with no right to petition for 4 years. *In re Hansmeier*, 884 N.W.2d 863, 863 (Minn. 2016) (order). He was suspended for his misconduct in four civil matters arising out of a porn fraud scheme he began in 2011.[1] As relevant here, Hansmeier's misconduct included making misrepresentations to tribunals, making false statements in legal documents and during legal proceedings, transferring funds to avoid paying sanctions, and perpetrating a fraud upon the court. *Id.* Hansmeier remains suspended.

The case before us involves misconduct related to Hansmeier's personal bankruptcy. In July 2015, Hansmeier filed a Chapter 13 voluntary petition for bankruptcy. His filings included schedules A–J and a statement of financial affairs, which he signed as true and correct under penalty of perjury. He also submitted a Chapter 13 plan.

---

[1]   Hansmeier's misconduct in those matters violated Minn. R. Prof. Conduct 3.1, 3.3(a)(1), 3.4(c), 3.4(d), 4.1, 8.4(c) and 8.4(d); Ill. R. Prof. Conduct 3.1, 3.3(a), 3.4(c), 4.1, 8.4(c) and 8.4(d); and Cal. R. Prof. Conduct 3–200 and 5–200. *Hansmeier*, 884 N.W.2d at 863.

The porn fraud scheme also resulted in federal criminal charges. *See United States v. Hansmeier*, No. 16cr334, 2017 WL 3971874 (D. Minn. Sept. 8, 2017). Hansmeier was convicted of conspiracy to commit mail fraud and wire fraud and conspiracy to commit money laundering. He was sentenced on June 14, 2019, to 14 years in prison followed by 2 years of supervised release. He is to pay restitution in the amount of $1,541,527.37.

2

Four months later, the U.S. bankruptcy trustee filed a motion to convert the bankruptcy from Chapter 13 to Chapter 7 based on Hansmeier's alleged bad faith and failure to propose a confirmable plan. On December 3, 2015, the bankruptcy court granted the motion.

The bankruptcy court found that Hansmeier: (1) failed to disclose a trust, significant monetary transfers leading up to the filing of the petition, and accurate household expenses; (2) failed to notify the trustee and court of his intent to sell his home and that he had moved to a rental property; and (3) failed to amend his schedules to reflect a substantial reduction in monthly expenses. The court stated that:

> [t]he misleading information on the schedules, the statement of financial affairs, Chapter 13 plan, timing of the case being the filing,[2] coupled with [Hansmeier's] pre-petition actions and omissions before various courts across the country indicate that this case was designed for one purpose only, to thwart the collection efforts of creditors.

A bankruptcy appellate panel for the Eighth Circuit Court of Appeals affirmed. As explained in that opinion:

> 'A Chapter 13 petition filed in bad faith may be dismissed or converted for cause under 11 U.S.C. § 1307(c). Such cause includes filing a bankruptcy petition in bad faith. The bad faith determination focuses on the totality of the circumstances, specifically: (1) whether the debtor has stated his debts and expenses accurately; (2) whether he has made any fraudulent representation to mislead the bankruptcy court; or (3) whether he has unfairly manipulated the bankruptcy code.' Each of these factors was present in this case.

---

[2] In one of several civil matters in which Hansmeier was sanctioned and ordered to pay fees, the district court issued a post-judgment discovery order requiring Hansmeier to turn over financial records. He filed for bankruptcy the day before the court-ordered filing deadline.

3

*In re Hansmeier*, 558 B.R. 299, 303 (B.A.P. 8th Cir. 2016) (quoting *Molitor v. Eidson*, 76 F.3d 218, 220 (8th Cir. 1996)).

On January 29, 2019, the Director filed a petition for discipline with our court, alleging that Hansmeier had violated Rules 8.4(c) and (d), Minnesota Rules of Professional Conduct. The Director asserted that, "[i]n continuation of his efforts to avoid court ordered disclosure of financial information, hide assets and avoid payment of sanctions entered against him, respondent filed for bankruptcy and, in his bankruptcy filings and during the bankruptcy proceeding, knowingly made false and misleading statements and omissions of material fact." The Director alleged five misrepresentations by omission—the same misrepresentations found by the bankruptcy judge when granting the motion to convert.

An evidentiary hearing was held before a referee on June 27, 2019. The referee ordered a transcript to assist in the preparation of his report. On July 31, 2019, the referee issued his findings of fact, conclusions of law, and recommendation for discipline. The referee found that four of the five misrepresentations alleged in the petition were substantiated by the record.

First, the referee found that Hansmeier failed to disclose the Mill Trust. Hansmeier established the Mill Trust—a self-settled, irrevocable trust with a spendthrift clause—in 2010. Hansmeier is the grantor and sole manager of the trust, and his wife is the trustee. His wife testified in her Rule 2004 bankruptcy examination that, as trustee, she "was in charge of using the money as [she] saw fit for [their] family." Hansmeier retained the right to veto any distribution of funds. Schedule B in the bankruptcy filing shows that Hansmeier disclosed only an account called "SELF SETTLED TRUST MONYET" with a

4

value of $8,554. On the statement of financial affairs, Hansmeier wrote: "Debtor created a trust for wife and kids in early 2010 named Monyet, LLC. Trust now has $8544.00." The Mill Trust and Monyet, LLC, are separate, but related, entities. The Mill Trust is not disclosed by name anywhere in the filings.

Second, the referee found that Hansmeier failed to disclose transfers totaling in excess of $500,000. Between May 2013 and May 2014, 19 wire transfers were completed from the brokerage account for Monyet, LLC to various entities. The final transfer was of all available cash in the account. In total, the 19 transfers added up to $590,333. Of that amount, $245,000 was transferred to Hansmeier's wife. No transfers were disclosed in the bankruptcy filings.

Third, the referee found that Hansmeier failed to notify the trustee and bankruptcy court of his intent to sell his home, a condominium. In his July bankruptcy filing, Hansmeier disclosed a one-half interest in a Minneapolis condominium with a total value of $885,000. In September, Hansmeier sent an email to his bankruptcy counsel about the possibility of selling his home. In September or October, Hansmeier and his wife entered into a listing agreement with a real estate broker. As of late October, significant renovations of the condominium were underway. Hansmeier only filed a motion to sell the condominium with the bankruptcy court on November 25—after the bankruptcy trustee discovered the property listing—and by that time he had already entered into a purchase agreement stating that the home would be sold on December 10. The property sold for $1.2 million. The bankruptcy court found it reasonable to conclude Hansmeier might never

5

have disclosed the sale nor turned over sale proceeds without the trustee discovering the property was listed.

Fourth, the referee found that Hansmeier failed to notify the trustee and bankruptcy court of his move to a new residence and the resulting change in household expenses, although the referee noted that the change was a temporary increase, rather than decrease, of those expenses. On October 5, 2015, Hansmeier and his wife moved to a rental property in Woodbury under a six-month lease. For a time, Hansmeier's wife was paying the Minneapolis condominium mortgage payments and the Woodbury rent payments. This move was not disclosed nor were the bankruptcy schedules amended to reflect the change in household expenses. The move was first addressed during the bankruptcy examinations in late October.

As to the fifth misrepresentation alleged in the petition, the referee was unable to find that Hansmeier knowingly misrepresented his household expenses. Hansmeier testified in his examination that his wife pays all monthly expenses, including the mortgage loan and household expenses. On Schedule J, Hansmeier claimed that the monthly household expenses totaled $9,779. On Schedule I, he claimed his wife's net monthly income was $4,889.41. Although there is a discrepancy between the expenses and the income purportedly used to pay the expenses, the referee acknowledged the difference could have been made up from other sources.

The referee concluded that "[t]he Director has prove[n] by clear and convincing evidence that the Respondent made knowingly false statements and omissions in his personal bankruptcy matter in violation of Rule[s] 8.4(c) and (d), [Minnesota Rules of

6

Professional Conduct]." Based on these violations, six aggravating factors, and no mitigating factors, the referee recommended disbarment.

## ANALYSIS

Because neither party ordered a transcript of the disciplinary hearing, we "accept [the] referee's factual findings as conclusive" and "similarly accept as conclusive the conclusions that the referee draws from the facts, such as whether the attorney's conduct violated the Rules of Professional Conduct." *In re Montez*, 812 N.W.2d 58, 66 (Minn. 2012); *see* Rule 14(e), Rules on Lawyers Professional Responsibility (RLPR).[3] We review de novo "the referee's interpretation of the Rules of Professional Conduct, and other conclusions of law that do not rely on the referee's factual findings." *Montez*, 812 N.W.2d at 66.

The only issue before us is the appropriate discipline to impose for Hansmeier's misconduct. In deciding what discipline is appropriate, we afford great weight to the referee's recommendation, but we alone make the final determination. *In re Coleman*, 793 N.W.2d 296, 308 (Minn. 2011). The purposes of attorney discipline "are to protect the public, to protect the judicial system, and to deter future misconduct by the disciplined attorney as well as by other attorneys." *In re Oberhauser*, 679 N.W.2d 153, 159 (Minn.

---

[3] It does not change our analysis that the referee ordered a transcript to assist in the preparation of his report. *See In re Garcia*, 792 N.W.2d 434, 442 (Minn. 2010). In *Garcia*, as in this case, only the referee ordered a transcript. The attorney in *Garcia* relied on the referee's decision to order a transcript when he informed the court of his challenge under Rule 14(e), RLPR. Because the attorney subsequently failed to file a brief, however, we upheld the referee's findings and conclusions. *Id.* at 442. Here, there is no evidence that Hansmeier relied on the referee's decision to order a transcript, nor did he file a brief.

2004). In determining an appropriate disciplinary sanction, we consider "(1) the nature of the misconduct; (2) the cumulative weight of the disciplinary violations; (3) the harm to the public; and (4) the harm to the legal profession." *In re Nelson*, 733 N.W.2d 458, 463 (Minn. 2007). We impose sanctions "on a case-by-case basis after considering both aggravating and mitigating circumstances, as well as looking to similar cases for guidance." *Oberhauser*, 679 N.W.2d at 159.

A.

First, we consider the nature of the misconduct. The referee concluded that Hansmeier knowingly made false statements and omissions in his personal bankruptcy matter. We have stated that "[h]onesty and integrity are chief among the virtues the public has a right to expect of lawyers" and that "[a]ny breach of that trust is misconduct of the highest order and warrants severe discipline." *In re Ruffenach*, 486 N.W.2d 387, 391 (Minn. 1992); *see also In re Nwaneri*, 896 N.W.2d 518, 525 (Minn. 2017) (noting that making false statements to a court is "significant misconduct").

We have suspended or disbarred attorneys who have made false statements under oath to a court. *See Nwaneri*, 896 N.W.2d at 526 (collecting cases); *In re Schmidt*, 402 N.W.2d 544, 548 (Minn. 1987) (same). We have also suspended or disbarred attorneys for engaging in misconduct during personal bankruptcy proceedings. *Compare In re Graham*, 503 N.W.2d 476, 480 (Minn. 1993) (disbarment), *with In re Crabtree*, 916 N.W.2d 869, 870 (Minn. 2018) (order) (9-month suspension), *and In re Halverson*, 731 N.W.2d 147, 149 (Minn. 2007) (order) (6-month suspension).

8

The referee found that Hansmeier made misrepresentations by omission in his schedules and statement of financial affairs; failed to notify the trustee and court of material financial changes throughout the course of the bankruptcy; and gave "incorrect and false answers as well as feigned ignorance of matters in which [he] was intimately involved" in his examination. The referee found that Hansmeier's testimony at his disciplinary hearing was similarly untrustworthy. The false statements to the bankruptcy court and in his examination were made under oath, and the omissions in the bankruptcy filings were similarly done under penalty of perjury. Further, the referee concluded that the misconduct was "knowing" and "deliberate." The nature of this misconduct warrants severe discipline.

B.

Second, we consider the cumulative weight of the violations. In doing so, "we have considered the number of rules violated and whether the misconduct was a single, isolated incident or a brief lapse of judgment." *In re O'Brien*, 894 N.W.2d 162, 166 (Minn. 2017). "[T]he cumulative weight and severity of multiple disciplinary rule violations may compel severe discipline even when a single act standing alone would not have warranted such discipline." *Oberhauser*, 679 N.W.2d at 160.

The referee found that Hansmeier had committed multiple violations of the same rules over the course of his entire bankruptcy proceeding, engaging in a pattern of misconduct. In his July filings, he failed to disclose the Mill Trust and transfers totaling in excess of $500,000. His October examination, taken under oath, was "replete with incorrect and false answers as well as feigned ignorance." And, for at least one month, Hansmeier failed to disclose his intent to sell the Minneapolis condominium, his move to

9

the Woodbury rental property, and his change in living expenses. This behavior was not a single, isolated incident.

C.

Third, we consider the harm to the public and the legal profession. The administration of justice relies upon the integrity of attorneys, who act as officers of the court. *In re Schmidt*, 402 N.W.2d 544, 548 (Minn. 1987). "[M]aking false statements to a court harms the public and the legal profession." *Nwaneri*, 896 N.W.2d at 526. Lawyers who have demonstrated a lack of truthfulness and candor are subject to severe discipline. *Schmidt*, 402 N.W.2d at 549 (collecting cases disbarring attorneys for false representations to tribunals).

Although we typically look to client harm to gauge harm to the public, s*ee In re Hulstrand*, 910 N.W.2d 436, 443 (Minn. 2018), Hansmeier's misconduct occurred in his personal bankruptcy, not in the course of client representation. Looking to public harms in that area, we recognize that it is a fundamental purpose of bankruptcy "to provide an equal opportunity for all creditors to share in the assets of the debtor available for distribution." *In re Johnson*, 8 B.R. 371, 374 (Bankr. D. Minn. 1981). The bankruptcy judge found that Hansmeier's filing "was designed for one purpose only, to thwart the collection efforts of creditors." The referee similarly found that Hansmeier's misconduct "was calculated and motivated by his desire to hide assets from his creditors in the bankruptcy case." Hansmeier's pattern of false and misleading statements to tribunals and his willingness to abuse the legal process at the expense of his creditors pose a significant risk of harm to the public and legal profession.

10

D.

Fourth, we consider aggravating and mitigating factors. The referee concluded there were no mitigating factors, and the record does not suggest that any would apply. The referee further concluded that there were six aggravating factors. Three of these—intentional misconduct, misconduct in official legal proceedings, and pattern of misconduct—go to the nature and cumulative weight of the misconduct and were improperly considered as aggravating factors. The remaining three—previous similar discipline, lack of remorse, and selfish motive—were appropriately considered.

We have imposed a harsher sanction when an attorney has been disciplined for professional misconduct in the past. *Oberhauser*, 679 N.W.2d at 160; *see also In re McCoy*, 447 N.W.2d 887, 889–90 (Minn. 1989) (discussing the attorney's disciplinary history even when a portion of the alleged misconduct predated the prior disciplinary proceeding). "Prior disciplinary history 'weighs heavily' if the prior discipline was for similar misconduct." *Hulstrand*, 910 N.W.2d at 444 (quoting *In re Tigue*, 900 N.W.2d 424, 432 (Minn. 2017)). Hansmeier was publicly disciplined in 2016 for misconduct which is substantially similar to the misconduct at issue here, including making misrepresentations to tribunals, making false statements in legal documents and during legal proceedings, transferring funds to avoid paying sanctions, and perpetrating a fraud upon the court. He was indefinitely suspended for a minimum of 4 years and remains suspended today.

An attorney's lack of remorse may also be used as an aggravating factor. *In re Rebeau*, 787 N.W.2d 168, 176 (Minn. 2010). The referee found, and the record confirms,

11

that Hansmeier exhibited no remorse and did not accept responsibility for his misconduct. In fact, one of his asserted affirmative defenses before the referee was his good faith reliance on the advice of his bankruptcy counsel. That very same counsel had withdrawn from representing Hansmeier in his bankruptcy appeal because she claimed her obligation of truthfulness to the court clashed with her obligations to Hansmeier, her client.

An attorney's selfish motive may aggravate misconduct. *In re Fairbairn*, 802 N.W.2d 734, 747 (Minn. 2011). The referee found that Hansmeier engaged in calculated misconduct with the sole motivation to advance his financial status at the expense of others. The record amply supports the conclusion that Hansmeier's misconduct in his personal bankruptcy proceeding was motivated by self-interest.

E.

Finally, we look to similar cases to "ensure that our disciplinary decision is consistent with prior sanctions." *In re Nathanson*, 812 N.W.2d 70, 80 (Minn. 2012). Our decision in *In re Graham*, 503 N.W.2d 476 (Minn. 1993), is particularly instructive. In that case, an attorney was disbarred because he had "(1) fabricated documents and given false testimony; (2) engaged in a pattern of submitting false evidence and fabricated documents; (3) failed to file federal income tax returns; (4) engaged in a pattern of conduct prejudicial to the administration of justice; and (5) failed to cooperate in the disciplinary proceeding." *Graham*, 503 N.W.2d at 477. The fabricated documents and false testimony occurred in the attorney's personal bankruptcy proceeding, and many of the attorney's acts of misconduct were motivated by the attorney's willingness to abuse the legal system for personal financial gain. *Id.* at 479–80.

Hansmeier, like the attorney in *Graham*, has shown an unrelenting readiness to engage in intentional misconduct for his own personal gain. Hansmeier's multi-year history of misconduct is defined by "dishonesty, fraud, deceit, [and] misrepresentation." Minn. R. Prof. Conduct 8.4(c). He has been disciplined by this court, has had civil sanctions entered against him, and has been convicted of federal crimes. Hansmeier's misconduct in the current disciplinary action is merely the latest in a long series of attempts to escape the consequences of his actions and to abuse the very legal system he swore to uphold. Hansmeier's misconduct is prejudicial to, and is truly the antithesis of, the administration of justice. *See* Minn. R. Prof. Conduct 8.4(d) (stating that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice"). We conclude that, in light of Hansmeier's serious misconduct, the appropriate discipline is disbarment.

## CONCLUSION

For the foregoing reasons, respondent Paul R. Hansmeier is disbarred from the practice of law in the State of Minnesota, effective on the date of this opinion. Respondent shall comply with Rule 26, RLPR, and shall pay $900 in costs pursuant to Rule 24(a), RLPR.

Disbarred.